IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALLIED WORLD ASSURANCE COMPANY (U.S.), INC.,** | MISC. NO. **1:11-mc-00342** |
| **Plaintiff** | |
| v. | |
| **LINCOLN GENERAL INSURANCE COMPANY,** | **Judge Sylvia H. Rambo** |
| **Defendant** | |

# **M E M O R A N D U M**

Presently before the court is Plaintiff, Allied World Assurance Company's ("Allied World") motion to enforce a subpoena against Lincoln General Insurance Company ("Lincoln"). (Doc. 2.) The motion has been briefed and is ripe for disposition. For the reasons below, the motion will be granted in part and denied in part.

## **I.     Background**[1]

This matter involves a bad faith insurance action ("bad faith action") brought by Plaintiffs Vanessa Lymon, as Plenary Guardian of Kendra Lymon and Assignee of Bynum Transport Inc., ("Bynum") and Robert Bohn ("Bohn") against Allied World, Bohn's excess insurer, for allegedly acting in bad faith by failing to settle Lymon's personal injury claim against Bynum and Bohn ("underlying

---

[1] This recitation of facts is derived from the parties' briefs. It is assumed that, consistent with Federal Rule of Civil Procedure 11, the factual representations are accurate. The facts are uncontested, unless noted.

lawsuit"). The bad faith action is currently pending in the United States District Court for the Middle District of Florida, docketed at 8:10-cv-1927-T-23TBM. At issue here is a subpoena, dated October 7, 2011, that was issued in the Middle District of Pennsylvania by Allied World to Lincoln, a non-party in the bad faith action, requesting various documents relating to the underlying lawsuit.

Some background regarding the underlying lawsuit is necessary to understand the nature of the bad faith action. The lawsuit was commenced following a collision on August 21, 2007, between a car driven by Kendra Lymon and a truck and tank trailer operated by Robert Bohn and owned by Bynum Transport, Inc. (Pl.'s Br. in Supp., Doc. 3 at 3.) At the time of the collision, Bynum and Bohn were insured by a primary insurance policy issued by Lincoln, which had $1 million in liability limits, and an excess policy from Allied World, which provided an additional $1 million in liability limits. (*Id.* at 2.) Following the accident, Lymon filed a personal injury claim against Bynum and Bohn (the aforementioned "underlying lawsuit"). (*Id.*) It is undisputed that Lincoln, as the primary insurer, investigated the claim and defended Bynum and Bohn. (*Id.* at 3.) Allied World did not defend Bynum and Bohn in that action. Lincoln, through its adjuster, Greg Fetcho ("Fetcho"), retained an agency to investigate the facts and an attorney to represent its insureds. (*Id.*)

In May, 2008, Lincoln and Allied World offered their combined $2 million of coverage to Lymon. (*Id.*) Lymon rejected the offer, claiming that Lincoln's retained attorney "never properly disclosed the extent of Bynum and Bohn's insurance coverage." (*Id.*) Lincoln's attorney was subsequently discharged and replaced. (*Id.*)

On March, 20, 2009, a jury returned a $65 million verdict against Bynum and Bohn. (*Id.* at 2, 4.) Following the judgment, a series of mediations took place that involved Lymon, Bynum, Bohn, Lincoln, Allied World, as well as Lincoln's first attorney and his replacement. (*Id.* at 4.) As a result of the mediations, the judgment was satisfied as to Bynum and partially satisfied as to Bohn as well as Lincoln, which paid more than its $1 million policy limit. (*Id.*) Thereafter, Bohn and Vanessa Lymon, as Plenary Guardian of Kendra Lymon and Assignee of Bynum Transport Inc., commenced this bad faith action seeking to recover the balance of the judgment from Allied World. (*Id.*) Lymon and Bynum contend that Allied World breached its "fiduciary duty with respect to the investigation, evaluation, negotiation, settlement and defense of the Lymon claim" by, *inter alia*, failing to settle Lymon's claim within the policy limits. (Doc. 3, Ex. B, Cons. Compl. ¶¶ 23, 25). To defend against this claim, Allied World is seeking, by way of a subpoena duces tecum, documents from Lincoln related to Lincoln's investigation and defense of Bynum and Bohn in the underlying lawsuit. (Doc. 3, Ex. A.) Prior to the issuance of that subpoena, which is at issue here, other subpoenas were issued, to which Lincoln objected via letters to Allied World, stating several objections including technical deficiencies regarding service of the subpoena and also objecting to the nature of the document requests on grounds of privilege, confidentiality, and over breadth. (*See, e.g.,* Doc. 3, Exs. H & I.) Lincoln did, however, produce approximately 420 pages of materials which contained copies of non-privileged communications. (Doc. 13 at 10.) Following numerous correspondence between counsel for Allied World and Lincoln, and the issuance of several refined subpoenas, Lincoln's objections remained, resulting in the present motion to enforce the subpoena.

## II.         <u>Discussion</u>

Allied World's subpoena contains a five-page attachment listing twenty-one document requests.  The general types of documents the subpoena seeks include: (1) Lincoln's entire claim file for the underlying case and the claim made by Kendra Lymon against Lincoln and Allied World's insureds, Bynum and Bohn, and documents one would expect to find within a claims file such as notes and settlement and reserve authority requests; (2) the underwriting file for the Lincoln Policy and documents one would expect to find in an underwriting file; (3) the personnel file – except for confidential personal information – for Lincoln's adjuster Greg Fetcho; (4) all communications – whether maintained in the claims file or elsewhere – between and among Greg Fetcho, other Lincoln employees, the insureds, Bynum and Bohn, defense counsel retained by Lincoln to represent the insureds; and any other parties that relate to the defense of Lincoln and Allied World's insureds in the Underlying Case; (5) all communications between and among Lincoln's bad faith counsel and third parties such as Lymon, Bynum, Bohn, and defense counsel, which were shared among adverse parties and, thus, are not attorney-client privileged or work product; (6) copies of insurance polices, including reinsurance, providing coverage for Lincoln for the bad faith claims made against it as a result of the underlying case and claims made under those polices; and (7) documents regarding any claims made against Lincoln as a result of the way Lincoln handled the underlying case.  (*See* Pl.'s Reply Br., Doc. 14 at 3.)[2]

---

[2] This categorized summary of the documents requested is taken directly from Plaintiff's Reply Brief. (Doc. 14.)  After reviewing the requests contained in the subpoena, the court finds this summary to be consistent with the nature of the actual requests.

Allied World categorizes the objections memorialized in letters from Lincoln's attorneys as (1) technical objections, (2) work product objections, (3) attorney-client privilege objections, (4) settlement or mediation privilege objections, and (5) an unwarranted intrusion objection. Lincoln's brief in opposition does not dispute this characterization of its objections. The only category of documents specifically identified by Lincoln as undiscoverable is the employment file of Greg Fetcho. The court will analyze each objection in turn.

### A. Technical Objections

Allied World represents that Lincoln objected to the subpoena on the ground that no related action had been opened in the Middle District of Pennsylvania and that the attorney issuing the subpoena must be admitted to the district court from which the subpoena was issued. (Doc. 3 at 7.) These objections lack merit. Under Federal Rule of Civil Procedure 45(a)(3), an attorney may issue and sign a subpoena as an officer of "a court for a district where a deposition is to be taken or production is to be made, if the attorney is authorized to practice in the court where the action is pending." Fed. R. Civ. P. 45(a)(3). Here, Kathryn Christian, attorney for Allied World, signed the subpoena and is authorized to practice in the Middle District of Florida, where this bad faith insurance action is pending. (*Id.*; Doc. 3, Ex. A.)

Lincoln also argues that the subpoena was not properly served because the Proof of Service states that the subpoena was served on October 11, 2011, to "Chris Klimes as administrative assistant." (Doc. 13 at 13.) Lincoln argues that this service was improper because "personal service of the subpoena on 'an officer or authorized agent of Lincoln General' was necessary" to comply with Federal Rule of Civil Procedure 45(b)(4). (*Id.*) Lincoln appears to be inferring, without explicitly

5

stating, that Chris Klimes is not an officer or authorized agent of Lincoln, or at least that Allied World has failed to make such a showing. That this objection is repeated in its Brief in Opposition is somewhat curious given that Lincoln stated earlier in its Brief, when defending its "technical objections," that "Lincoln General's objections ultimately forced Allied World *to issue a proper subpoena in a proper jurisdiction . . .*" (*Id.* at 4.) It would appear that, although Lincoln's objections are renewed, they are also conceding that the subpoena has been issued properly. In any event, Lincoln's argument fails. Federal Rule of Civil Procedure 45(b) (dealing with service of subpoenas) does not require that service of a subpoena upon a corporation be done personally and to an authorized agent or officer. Furthermore, Federal Rule of Civil Procedure 4(h) (regarding service of a corporation) permits service to be made in "a manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Federal Rule of Civil Procedure 4(e)(1) permits an individual to be served "following state law for serving a summons in an action brought in courts of general jurisdiction . . . ." Turning then to Pennsylvania law, Pennsylvania Rule of Civil Procedure 424 provides:

> Service of original process upon a corporation or similar entity shall be made by handing a copy to any of the following persons provided the person served is not a plaintiff in the action:
>
> (1) an executive officer, partner or trustee of the corporation or similar entity, or
>
> (2) *the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity*, or
>
> (3) an agent authorized by the corporation or similar entity in writing to receive service of process for it.

Pa. R. Civ. P. 424 (emphasis added). An affidavit from a process server attached to Allied World's reply indicates that the process server identified himself and stated that he had legal papers to serve on Lincoln. (Doc. 14-2.) In response, Chris Klimes appeared and agreed to accept service of the subpoena. (*Id.*) The court is satisfied that service was proper and Lincoln's objections are overruled in this regard.

### B. Work Product Objections

Lincoln objects to Allied World's subpoena on the ground that it has not made the requisite showings to justify an intrusion on Lincoln's work product privilege. (Doc. 13 at 4.) Lincoln argues that Allied World has failed to demonstrate the "substantial need" and "undue hardship" required to compel production of fact or opinion work product under Federal Rule of Civil Procedure 26(b)(3). (*Id.* at 5.) In response, Allied World argues that, under Florida law,[3] work product material generated in the adjustment of an underlying claim, and in defense of insureds in the underlying litigation, up to and including the date of the resolution of the claim, is discoverable in a third-party bad faith case. (Doc. 3 at 9.) The court agrees.

Generally, Florida protects from discovery the work product of a party or documents prepared in anticipation of litigation. *Liberty Mut. Fire Ins. Co. v. Kaufman*, 885 So. 2d 905, 909-910 (Fla. Dist. Ct. App. 2004) (citing Fla. R. Civ. P.

---

[3] Allied World notes that Pennsylvania choice-of-law rules apply to this motion. (Doc. 3 at 6) (citing *Gould, Inc. v. CNA,* 809 F. Supp. 328, 331 (M.D. Pa. 1992)). These rules require "an analysis of the policies and interests underlying the particular issue before the Court," such that "the place having the most interest in the problem" has "paramount control over legal issues arising out of a particular factual context and thereby allows the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of the particular litigation." (*Id.* at 6-7) (quoting *Gould,* 809 F. Supp. at 331). Here, the underlying accident occurred in Florida, the resultant litigation occurred in Florida, and the bad faith case is presently pending in Florida. Thus, Florida has the most interest in the case and Florida law applies. Defendant does not dispute this conclusion in its brief in opposition.

1.280). An insurer's claims and litigation files constitute work product and are protected from production. *Id.* (citing Fla. R. Civ. P. 1.280(b)(3)). However, where a fiduciary duty exists between the parties, courts may compel production if the party seeking production is able to show a "substantial need." *Kaufman*, 885 So. 2d at 910. This is true even if a fiduciary relationship later turns adversarial. *Id.* (citing *Springer v. United Servs. Auto. Assoc.*, 846 So. 2d 1234, 1235 (Fla. Dist. Ct. App. 2003)).

The Florida Supreme Court has held that, in third-party bad faith actions for failure to settle a claim, "discovery of the insurer's underlying claim file type material is permitted over objections of work product protection." *Allstate Indemnity Co. v. Ruiz*, 899 So. 2d 1121, 1126 (Fla. 2005). In so holding, the court noted:

> It is clear that in an action for bad faith against an insurance company for failure to settle a claim within policy limits, all materials, including documents, memoranda and letters, contained in the insurance company's file, up to and including the date of judgment in the original litigation, should be produced.

*Id.* (quoting *Stone v. Travelers Ins. Co.,* 326 So. 2d 241, 243 (Fla. Dist. Ct. App. 1976)). This rule has been "historically predicated on the fact that the insurer owes to the insured a duty of fair dealing, honesty and due regard for the insured's interests in handling the third-party litigation." *Id.*

As Lincoln points out, this case is distinguishable because in *Ruiz*, the insurance company ordered to produce the requested documents was defending against the bad faith claim. Here, by contrast, the party from which documents are sought (Lincoln) is a non-party to the bad faith action. Nevertheless, relevant case law makes clear that Lincoln owed a fiduciary duty not only to Bynum and Bohn as

the insureds, but also to Allied World as the excess insurer. *See Progressive Am. Ins. Co. v. Nationwide Ins. Co.*, 949 So. 2d 293, 294 (Fla. Dist. Ct. App. 2007) ("[I]n Florida, a primary carrier owes a duty of good faith to an excess carrier – the same duty it owes to its insured.") (citing *Ranger Ins. v. Travelers Indem. Co.*, 389 So. 2d 272, 275 (Fla. Dist. Ct. App. 1980)); *accord Central Nat'l Ins. Co. of Omaha v. Med. Protective Co. of Fort Wayne, Indiana*, 107 F.R.D. 393, 394-95 (E.D. Mo. 1985) ("When there is excess liability coverage, the duty owned to the excess insurance carrier by the primary carrier is identical to that owed to the insured.")

Furthermore, Lincoln's claim file is very likely the only place such information can be ascertained. As the Florida Supreme Court in *Ruiz* explained:

> [In] 'bad-faith' failure to settle or defend [cases], . . . the pertinent issue is the manner in which the company has handled the suit including its consideration of the advice of counsel so as to discharge its mandated duty of good faith. Virtually the only source of information on these questions is the claim file itself.  Accordingly . . . it has been consistently held in our state that a claim file is subject to production in such an action.

*See Ruiz*, 899 So. 2d at 1129 (quoting *Fidelity & Cas. Ins. Co. of New York v. Taylor*, 525 So. 2d 908 (Fla. Dist. Ct. App. 1987)); *see also Employers Mut. Cas. Co. v. Key Pharm., Inc.*, 1992 U.S. Dist. LEXIS 11091, *3 (S.D.N.Y. July 27, 1992) (holding that an insurer may not use the attorney-client or work product privilege against an excess insurer. . . to prevent disclosure of documents related to the underlying litigation because such documents "go to the heart of the case.").

Given the fiduciary relationship between Lincoln and Allied World in the underlying litigation, and the importance of the requested documents to Allied World's defense in the bad faith action, the court is satisfied that there exists a

"substantial need" for these documents and the information contained therein. Lincoln does not provide, nor is the court aware of any other source that would provide Allied World with this information.  Accordingly, the court finds that the work product privilege is inapplicable as to any communications between Lincoln and Lincoln's retained defense counsel concerning the defense of Bynum and Bohn and therefore those documents are discoverable.  *See Allstate Ins. Co. v. Levesque*, 263 F.R.D. 663, 668 (M.D. Fla. 2010).  Further, documents containing comments and evaluations by representatives of Lincoln concerning the legal work performed by Lincoln's retained counsel while representing Bynum and Bohn must be produced.  *Id.*   However, the production need not include any correspondence and communications between Lincoln's employees or agents and Lincoln's in-house counsel as those documents remain privileged.  *Id.* (citing *Kaufman*, 885 So. 2d at 909).

### C. <u>Attorney-Client Privilege</u>

Lincoln also objects to the production of certain documents on the grounds that Allied World has failed to provide a reason upon which this court should ignore the well-settled rule that communications between attorneys, clients and their insurers are not discoverable. (Doc. 13 at 6.) Lincoln argues that its interests and those of Allied World are not aligned, the alignment of which might render the privilege inapplicable. (*Id.* at 7.)

The court agrees that the interests of Lincoln and Allied World are not aligned for the purposes of this motion or in the pending bad faith action. However, there is no doubt that their interests were aligned in the underlying personal injury litigation. Generally, when an insurer accepts the defense obligations of its insured, certain interests of the insured and the insurer essentially merge. *See Kaufman*, 885 So. 2d at 908. Given Lincoln's fiduciary duty to Allied World, it is likewise true that Lincoln's and Allied World's interests also essentially merged. Such common interests bar the attorney-client privilege from attaching to communications among the attorney, the insurer and the insured. *Id.* (citations omitted).

In *Kaufman*, a case that involved a bad faith insurance claim for failure to settle the underlying litigation, the court found that certain documents were discoverable because the parties shared common interests during the underlying litigation and a fiduciary duty existed between the parties. Specifically, the court found that, in light of the fiduciary relationship between insured and the insurer in the underlying trial, any correspondence between the insurer and the insurer's retained counsel concerning insured's cases was not privileged and must be produced by the insurance company. *Kaufman,* 885 So. 2d at 909; *see also Springer*, 846 So.

2d at 1235 (holding that "communications between an insured and his counsel that pertain to the common interest held by the insured and the insurer – *i.e.* the defense of the claim – are available to the insurer and this right of access would continue even if their interests became adverse.") Likewise, here, Lincoln and Allied World shared a common interest in defending against Lymon's personal injury claim in the underlying litigation. Moreover, as stated, Lincoln had a fiduciary duty to Allied World. In light of this, any communications between Lincoln and its retained counsel concerning Lincoln's defense in the underlying case are discoverable. However, here again, communications between Lincoln employees or agents and Lincoln's in-house counsel remain protected as attorney/client communications. *See Kaufman*, 885 So. 2d at 909 (citing *Progressive Am. Ins. Co. v. Lanier*, 800 So. 2d 698, 691 (Fla. Dist. Ct. App. 2001)).

### D.  Mediation Privilege

Lincoln claims that the discovery of mediation-privileged communications is prohibited under Florida's Mediation and Privilege Act. (Doc. 13 at 8.) The court disagrees. Section 44.405 of the Mediation and Privilege Act provides that "[a] mediation participant shall not disclose a mediation communication to a person other than another mediation participant or participant's counsel." *Fla. Stat.* 44. 405(1). This privilege is therefore inapplicable where, as here, both Lincoln and Allied World were mediation participants and there has been no effort to disclose the communications to persons other than mediation participants. *See Altheim v. Geico Gen. Ins. Co.*, 2010 U.S. Dist. LEXIS 133782, * 4 (M.D. Fla. Dec. 8, 2010). Additionally, to the extent that Allied World is claiming communications that occurred outside the mediation process, the privilege may not

be invoked. *See id.* Moreover, a hearing was held on this subject in the pending bad faith action. The court found, citing *Altheim*, the mediation privilege to be inapplicable to this case. (Doc. 3-1, Ex. K, Order dated October 21, 2011, docket no. 8:10-cv-1927-T-23TBM.) This court agrees and, as such, documents requested that relate to the mediation proceedings shall be produced. However, any mediation documents in Lincoln's control that were created subsequent to Allied World's withdrawal from the proceedings are protected by the privilege and need not be produced.

### E.     **Employment File of Greg Fetcho**

Allied World's subpoena requests the employment file for Greg Fetcho, Lincoln's adjuster who was the primary handler of the underlying litigation. Specifically, the subpoena seeks:

> All documents . . . relative to training, education, experience, licensure, pay level, job positions, responsibilities and duties associated with those positions, any complaints, commendations, or other documentation of performance evaluations or reviews . . . of Greg Fetcho for the years 2000 through the earlier of 2009 or the end of his employment with Lincoln General. Allied World is not seeking the production of social security numbers, telephone numbers, drug test results, information relating to the employee's family, or any other protected health information.

(Doc. 3-1, Ex. A, ¶ 19). Lincoln objects to this request stating that the request is overly broad, does not seek information reasonably calculated to lead to the discovery of admissible evidence, and seeks privileged work product or attorney-client communications. (Doc. 13 at 11.) To the extent that Lincoln is claiming attorney-client or work product objections, those objections are overruled for the

13

reasons stated above. The court also finds Lincoln's remaining objections to be without merit.

Courts have found the type of information contained in a personnel file to be relevant to a bad faith claim and therefore discoverable. In *Waters v. Cont'l Gen. Ins. Co.*, 2008 U.S. Dist. LEXIS 47375 (N.D. Okla. June 19, 2008), a case involving a bad faith insurance claim, Plaintiff requested personnel files containing information regarding the adjusters' training and job performance. The court held that such information was discoverable in a bad faith insurance claim and ordered the defendant to produce files pertaining to "the adjusters' background, qualifications, training and job performance." *Id.* at *2. This production was limited to only those "adjusters who actually handled some aspect of Plaintiff's claim." *Id.* The court cautioned, however, that the production should not include sensitive personal or medical information that is not relevant to the issues of the case. *Id.*

Likewise, in *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169 (E.D. Pa. 2004), another case involving a bad faith insurance claim, the defendants lodged a similar objection, arguing that personnel files are highly confidential and unduly burdensome to produce. The court, noting a "heightened standard of relevance" for discovery of information contained in personnel files, found the requested documents to be relevant and to have a sufficient nexus to the bad faith claim. *Id.* at 184. The court noted that the defendant failed to identify precisely how such information might be confidential or embarrassing and also failed to identify a less confidential source from which Plaintiff could obtain this information. The same holds true here.

Lincoln attempts to distinguish these cases by once again noting that, in those cases, the insurance company was the defendant in the bad faith action while

14

here, Lincoln is not a party to the bad faith action. Once again, the court finds this argument unconvincing because Lincoln was a party to, and assumed the responsibility of defending against claims made in the underlying litigation which led to the bad faith claim. Accordingly, the court finds that Allied World's request for documents regarding the personnel file of Greg Fetcho was proper and Lincoln is required to produce this information accordingly.

### F. Privilege Log

Allied World notes that, of the documents produced by Lincoln, some were redacted. (Doc. 3 at 6.) Allied World argues that because Lincoln did not produce a privilege log, there is no way to determine whether those redactions were proper. (*Id.*) Lincoln retorts that no privilege log was necessary because Allied World stated in a letter to Lincoln that a privilege log was not necessary because no attorney/client privilege communications were sought. (Doc. 13 at 10; Doc. 13-4.) Thus, Lincoln argues that, "with this understanding in place," they produced documents without a privilege log. (Doc. 13 at 10.) This argument fails.

Federal Rule of Civil Procedure 45(d)(2)(A) provides that when a party withholds otherwise discoverable subpoenaed information by claiming the informing is privileged, the party must expressly make the claim and describe the nature of the documents not produced and do so in a manner that, "without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45 (d)(2)(A); *see also* Fed. R. Civ. P. 26(b)(5)(A) (same, in relation to discovery generally). Further, Rule 34(b) provides that "[a]n objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). Lincoln's argument is, in essence, that they were relieved of their duty

15

to comply with these rules based on Allied World's belief that no privileged documents were being requested in the first place.  However, Lincoln nevertheless concluded that privileged information was requested, and withheld documents or information based upon that conclusion.  After reviewing Allied World's letter, the court finds the statement that "no log is necessary" is merely Allied World's position based upon its belief that no privileged documents are sought.  Such a statement is not indicative of an "understanding" between the parties that would relieve Lincoln of its obligation to provide a privilege log.  In fact, Lincoln obviously disagrees with Allied World's position.  Thus, Lincoln is required to satisfy its obligations under Federal Rules of Civil Procedure 26 and 45.  Accordingly, if Lincoln maintains that certain documents are subject to a  privilege, Lincoln shall provide Allied World with a privilege log identifying each document in sufficient detail to permit opposing counsel and, if  necessary, the court, to assess the applicability of the claimed privilege.

### G. Agreement to Reimburse

In its brief in opposition, Lincoln claims that during a teleconference between counsel for Lincoln and Allied World, representations were made by Allied World to reimburse Lincoln for its reasonable fees and costs associated with the gathering of the voluminous information sought. (Doc. 13 at 13-16.)  Lincoln further argues that Federal Rule of Civil Procedure 45(c)(1), which requires the court to protect a subpoenaed party from any undue burden or expense, entitles Lincoln to reimbursement of the expense of the attorneys and paralegals who gathered the requested materials.

Allied World denies that any agreement to reimburse the costs associated with the subpoena was entered into. (Doc. 14 at 10.) However, Allied World acknowledges its duty to reimburse to the extent necessary to satisfy Federal Rule of Civil Procedure 45. (*Id.* at 11.) At this point, the court is not in a position to make any ruling on this issue as there does not appear to be a real dispute between the parties. The court agrees with the parties that Allied World has a duty to take reasonable steps to avoid imposing an undue burden or expense on Lincoln and fully expects the parties to comport with this requirement. If a dispute regarding reimbursement for reasonable costs arises in the future, the court will address that issue at that time.

**III.**     **Conclusion**

In short, the court finds Lincoln's blanket claims of privilege or immunity to be insufficient. Courts have found that documents such as those requested here, including the claims file and documents pertaining to the underlying litigation, to be relevant and discoverable in a bad faith insurance claim. Absent objections to specific documents or categories of documents, the court can only rule as to the inapplicability of Lincoln's general privilege and immunity objections with regard to bad faith insurance claims. If, following this memorandum, Lincoln maintains privilege or immunity objections, the court will address those objections as to the specific documents or category of documents involved and, if necessary, conduct an *in camera* review as to those documents. Plaintiff's request for an *in camera* review is otherwise denied.

An appropriate order will be issued.

                                                s/Sylvia H. Rambo
                                           United States District Judge

Dated: February 2, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALLIED WORLD ASSURANCE COMPANY (U.S.), INC.,**  :<br>:<br>**Plaintiff**  :<br>:<br>v.  :<br>:<br>**LINCOLN GENERAL INSURANCE COMPANY,**  :<br>:<br>**Defendant**  : | **MISC. NO. 1:11-mc-00342**<br><br><br>**Judge Sylvia H. Rambo** |

# O R D E R

In accordance with the accompanying memorandum of law, it is **HEREBY ORDERED** that Plaintiff's motion to enforce subpoena (Doc. 2) is hereby **GRANTED in part** and **DENIED in part** as follows:

1. The motion is **GRANTED** as set out herein. Defendant shall produce within thirty (30) days of this order the requested documents in accordance with the directions and limitations set forth in the above memorandum. If any disputes arise pertaining to specific documents or categories of documents, the court will address those issues at that time.

2. Plaintiff's request for an *in camera* review is **DENIED**.

                                                      s/Sylvia H. Rambo
                                                      United States District Judge

Dated: February 2, 2012.